*1196 OPINION.
Siefkin:
The respondent in his determination increased the amount representing income of Helen Pitts Parker from dividends upon stock of the Parker Estate Company, Ltd., by $5,547.84. Petitioner had reported as dividends from this source $21,000, but she actually received $21,615. The parties at the hearing agreed that the amount taken by the respondent was erroneous and that the petitioner is subject to normal and surtaxes on $21,615 instead of only surtaxes on $21,000. The respondent also increased the petitioner’s taxable income for the year 1919 by the amount of $117,700, claiming it to be taxable as a liquidating dividend paid in capital stock of the Detroit Range Boiler & Steel Barrel Co. upon the dissolution of the Detroit Range Boiler Co.
We must first determine whether the petitioners received this stock in 1918 or in 1919.
At the time the Detroit Range Boiler Co. transferred its assets to the Detroit Range Boiler & Steel Barrel Co., on December 31, 1918, neither the Detroit Range Boiler Co. nor the Toledo Steel Barrel Co. was under any obligation under the contract of September 27, 1918, to proceed with the consolidation, since the period provided in the contract had expired. There is no evidence that the Toledo Steel Barrel Co. had given any assurance that it would proceed. It was not certain that the Detroit Range Boiler Co. would not retract its action as it was legally entitled to do. The principal object of the agreement entered into between the Detroit Range Boiler Co. and the Toledo Steel Barrel Co. was to effect a consolidation of the two companies, and this had not been accomplished in 1918.
The above conclusions are based upon our opinion that the evidence is clear that the distribution of stock to petitioners and others was calculated upon and in contemplation of a consolidation of the assets of the Detroit Range Boiler Co. and the Toledo Steel Barrel Co. The certificates of stock were received by the petitioners after the assets of the Toledo Steel Barrel Co. were transferred to the Detroit Range Boiler & Steel Barrel Co. and we have no doubt that such issue of stock was different in amount and value from stock which petitioners might have received from the Detroit Ratige Boiler & Steel Barrel Co. in 1918, since it represents different assets and it would have been based upon a situation which neither the corporations or the stockholders contemplated, i. e., the mere transfer of the assets of the Detroit Range Boiler Co. to the new company. The participation of the Toledo Steel Barrel Co. was an indispensable element in the transaction. At no time in 1918 was it certain that the Toledo Steel Barrel Co. would come into the deal.
*1197 It is our opinion that the stock in question was received by the petitioners in 1919.
The petitioners contend that since the statute contemplates the use of market value of the received stock in the calculation of gain, and since the respondent has referred only to the par value of the received stock, the deficiencies determined thereby can not be sustained by the Board. We can not agree with this contention. We can not assume that the respondent has determined deficiencies contrary to the provisions of the law. His determinations are prima facie correct and it is not sufficient for the petitioners to show an erroneous method, but they must affirmatively prove what the correct determinations should be.
The petitioners further contend that the stock which they received had no fair market value at the time it ivas received.
The evidence discloses that when the Detroit Range Boiler Co. and the Toledo Steel Barrel Co. first started negotiations for a consolidation of the two corporations, the Toledo Steel Barrel Co. offered to sell all its assets, including the materials it had on hand, for $125,000 cash. It later did sell the inventory to the Detroit Range Boiler Co. for about $30,000, and for the remainder of its assets it received $100,000 par value of 7 per cent cumulative preferred stock and $100,000 par value of common stock of the Detroit Range Boiler & Steel Barrel Co. At the time the negotiations were started there was a large demand for steel barrels. We may assume that the assets of the Toledo Steel Barrel Co. had no greater value than $125,000, since such offer was refused by the Detroit Range Boiler Co. Since the inventory was later sold to the Detroit Range Boiler Co. for about $30,000, it will be seen that for a property of a value of about $95,000, the Toledo Steel Barrel Co. received stock of the Detroit Range Boiler & Steel Barrel Co. to the amount of $200,000 par value. The evidence discloses that the Detroit Range Boiler Co. valued its assets for the purpose of the consolidation at a proportionately inflated valué. The record further shows that the Detroit Range Boiler Co. increased the value of its assets by undivided profits and other gains.
The stock of the Detroit Range Boiler Co. had been closely held in the Stoddard and Parker families since before 1913, and thereafter there were no sales of stock except those to Stoddard and Moore. The sale to Stoddard was not consummated and the sale to Moore was under such circumstances that it could not be deemed a basis for the valuation of the stock. The evidence shows that Stoddard turned in $38,500 par value of stock to the Detroit Range Boiler & Steel Barrel Co. to cancel that amount of his indebtedness to the corporation, but the evidence further discloses that the claim against him was not worth its face value, and that this transaction could not be *1198 the basis for determination of the value of the stock. The Detroit Range Boiler & Steel Barrel Co. passed a resolution authorizing the transfer of $50,000 par value of its stock to Moore at $75 per share, to be paid out of future earnings of the corporation, but this stock was never received by Moore and it is our opinion that this transaction is entitled to no consideration in valuing the stock.
The evidence further discloses that following the signing of the Armistice the Government canceled its contracts, there was a depression in business, and the value of machinery and equipment such as was used by the Detroit Range Boiler & Steel Barrel Co. decreased.
John R. Bodde, vice president of the largest banking institution in the State of Michigan, testified that the bank had dealings with both the Detroit Range Boiler Co. and the Detroit Range Boiler <& Steel Barrel Co. The bank loaned the Detroit Range Boiler Co. $50,000, and this credit was guaranteed by the estate of Arthur M. Parker. After the Detroit Range Boiler & Steel Barrel Co. was formed, the estate continued to guarantee the indebtedness. The bank would not have loaned money to either the Detroit Range Boiler Co. or the Detroit Range Boiler & Steel Barrel Co. without this guarantee. Bodde stated that the bank had the financial statements of both the Detroit Range Boiler Co. and the Detroit Range Boiler & Steel Barrel Co. and that he, as a banker, would not have accepted the common stock of either as collateral for loans. He said that the stock had no market value and that the bank would not rely on the stock to liquidate the loan in case of default in payment.
A stockbroker, specializing in unlisted securities in Detroit, testified that he never came in contact with the stock of the Detroit Range Boiler Co. or the Detroit Range Boiler & Steel Barrel Co. He testified that, as a general thing, in 1919 there was not a ready market for securities of closely held corporations. He said that there would be no ready market for stock of a corporation held by members of one or two families and upon which no dividends had been paid for a number of years.
From all the evidence we conclude that the common stock which the petitioners received had no fair market value at the time it was received by them. See George S. Parker, 10 B. T. A. 854. It follows that under section 202 (b) of the Revenue Act of 1918, the petitioners received no taxable gain upon the receipt of such stock.
With regard to the estate of Arthur M. Parker, since all the income and increment of the estate from the time of the death of Arthur M. Parker to 1918 was attributable'to Helen Pitts Parker, and this was represented by the $117,000 par value of stock which she received, it seems obvious that when the estate received stock of the Detroit Range Boiler & Steel Barrel Co. in 1919, it received nothing *1199 more than it had in 1914 when the stock of the Detroit Range Boiler Co. was received by it, and, therefore, no gain was realized on the transaction.
Reviewed by the Board.

Judgment will be entered wider Bule 50.

Phillips and Van Foss an concur in the result.